IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | | |
|---|---|---|
| **Kristen Ard Richardson**, | ) | C/A  2:14-1995-SB-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **AT&T Mobility Services LLC,** | ) | |
| **Daniel Brechbill and Sedgwich** | ) | |
| **Claims Management Services Inc.,** | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

This action has been filed by the Plaintiff, a former employee of the Defendant AT&T

Mobility Services LLC (AT&T), asserting claims for violation of the Americans with Disabilities

Act (ADA), 42 U.S.C. § 12101, et seq. (First Cause of Action); for breach of contract (Second Cause

of Action); for violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq.

(Third Cause of Action); and for intentional and negligent interference with contract/employment

(Fourth Cause of Action).  See Amended Complaint.[1]

---

[1]Plaintiff asserts her claims under the ADA and for breach of contract against the Defendant AT&T, and her claim under the FMLA against the Defendants AT&T and Daniel Brechbill.  Plaintiff also originally asserted her FMLA claim, as well as her separate claim for intentional and negligent interference with contract/employment, against Sedgwich Claims Management Service Inc. However, Plaintiff has withdrawn her claims against the Defendant Sedgwich.  See Plaintiff's Memorandum, n. 1.  Therefore, only Plaintiff's First, Second and Third Causes of Action remain to
(continued...)

1



The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 31, 2015. After receiving an extension of time to file a response, Plaintiff filed a memorandum in opposition to the Defendants' motion on August 31, 2015. Defendants' motion for summary judgment is now before the Court for disposition.[2]

### Background and Evidence [3]

Plaintiff began working for the Defendant AT&T in 2009 as a sales representative. The store manager where she worked was originally Mark Edens, and later the Defendant Brechbill. Plaintiff's Deposition, pp. 13-15. The terms of Plaintiff's employment were covered by a Regional Labor Agreement wherein she had union representation. Plaintiff's Deposition, pp. 38-39, and attached Exhibit 1 [Regional Labor Agreement]. Plaintiff also was subject to attendance and punctuality guidelines. See Exhibit [Non-Exempt Sales Attendance Guidelines], Court Docket No. 39-2, pp. 3-6.[4] These guidelines established a point system for tardies and absences, with the accumulation of 7 points subjecting an employee to termination. Id.

---

[1](...continued)
be litigated.

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]The facts and evidence are considered and discussed herein in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[4]The Court notes that several of Defendants' exhibits have blank pages on the filed copies. See generally, Court Docket Nos. 39-20, 39-21, 39-22, and 39-23. While Defendants courtesy hard copy provided to the Court included these pages, Defendants should verify all their exhibits and file appropriate pages for any blank ones so that the exhibits are accurately reflected on the filed copies as well.



When Plaintiff initially applied for a position with AT&T, she was interviewed by Edens and an assistant manager, during which (at some point) Plaintiff told Edens that she had Multiple Sclerosis. Edens Deposition, pp. 17-19. Edens testified that he told Plaintiff "she needed to file FMLA paperwork" and that "she would be covered . . . if something should arise about that". Edens Deposition, p. 20.[5] Edens testified that the only information Plaintiff ever gave him about her having MS was verbal. Edens also testified that, as Plaintiff's manager, he was required to keep up with her attendance per the Regional Labor Agreement policy, but that he also repeatedly told Plaintiff that she needed to fill out the FMLA paperwork so that when it came to consideration of her absences, administrators could "go back and look at the FMLA, any kind of and say okay, these absences weren't - - these were due to illnesses or whatever". Edens Deposition, p. 21. Edens further testified that AT&T had "a whole department that was dedicated to any kind of things for Disability Act", and that employees could "basically file a claim or not a claim but like a request for accommodations". Id., p. 22. However, Edens testified that, although he kept telling Plaintiff that she needed to fill out this paperwork, to his knowledge she never did. Id., p. 21. He also did not recall Plaintiff ever asking him for any type of accommodation she needed for a disability. Id., pp. 38-40.

On November 16, 2009, Edens gave Plaintiff a counseling entry for unsatisfactory attendance and punctuality. At that time, Plaintiff had accumulated two (2) unexcused absences, and had been late to work five (5) times. Edens Deposition, pp. 50-51; and attached Exhibit 1 [Counseling Discipline) (Court Docket No. 39-15). Edens testified that Plaintiff had not filled out

---

[5]The Defendant's attendance and punctuality guidelines provided, inter alia, that FMLA leave qualified as an excused absence. See Exhibit, Court Docket No. 39-2, p. 1.



any paperwork seeking to have any of these absences excused under the FMLA at that point. <u>Edens Deposition</u>, p. 54. Even so, the counseling memo Plaintiff received included information concerning Plaintiff's rights under the FMLA, and notified her that if any of her absences qualified for FMLA leave, that she should contact the appropriate leave administrator. <u>See Edens Deposition</u>, attached Exhibit 1 (Court Docket No. 39-15). However, there is no evidence that Plaintiff ever filed any paperwork or contacted the appropriate leave administrator to seek FMLA leave coverage with respect to any of the absences cited in this counseling memo. <u>See Hallmon Declaration</u>; <u>Korzekwa Declaration</u>. Indeed, Plaintiff testified that during the time Edens was her manager, that her condition was "in remission for a while", and that there were not really any incidents involving her condition "but that one time". <u>Plaintiff's Deposition</u>, p. 61.[6]

The Defendant Brechbill became the store manager and Plaintiff's supervisor in June 2011. <u>Brechbill Deposition</u>, p. 17; <u>Brechbill Declaration</u>. Brechbill testified that he had at some point he also become aware that Plaintiff had Multiple Sclerosis; testifying that it was more or less "common knowledge". <u>Brechbill Deposition</u>, pp. 14-15. Plaintiff testified that when Edens was her supervisor, he had "showed leniency and did not count [her being tardy or absent] against [her] attendance records", but that after Brechbill became her store manager, he told her that when she was out for an illness she needed to contact FMLA. <u>Plaintiff's Deposition</u>, pp. 37, 60-61. As Plaintiff's

---

[6]It is not clear what "one time" Plaintiff is referring to in her testimony. Although Plaintiff testified that Edens never gave her any formal discipline for attendance; <u>Plaintiff's Deposition</u>, p. 61; her counseling memo from Edens of November 16, 2009 states that she is being place on "written counseling" for having unexcused absences on October 26, 2009 and October 31, 2009, and for being late to work on September 23, 2009, September 24, 2009, October 23, 2009, October 28, 2009, and November 11, 2009. <u>See Edens Deposition, Exhibit One</u>, Court Docket No. 39-15, p. 1. In any event, as noted, there is no evidence (nor does Plaintiff even claim) that she asked for either an accommodation or FMLA leave for any of these absences.



manager, Brechbill generally gave Plaintiff good marks, although Plaintiff continued to have attendance issues. On her 2011 employee appraisal, with respect to attendance, Brechbill noted that Plaintiff was "currently on her final written warning for attendance". <u>Brechbill Deposition</u>, pp. 85-86.

Specifically, Brechbill attests that during his period of supervision of the Plaintiff, she was given a counseling for attendance on July 23, 2011, a written warning for attendance on August 12, 2011, and a final written warning for attendance on October 24, 2011. <u>Brechbill Declaration</u>, ¶¶ 5-7, and attached Exhibits 3-5 (Court Docket Nos. 39-3, 39-4, and 39-5). <u>See</u> <u>also</u> <u>Plaintiff's Deposition</u>, Exhibits 14, 15 and 17 (Court Docket Nos. 39-20, 39-21, and 39-22).[7] Under the Labor Agreement attendance guidelines, the final written warning was the last step before termination. <u>See</u> <u>Brechbill Declaration</u>, <u>Exhibit Two</u>, Court Docket No. 39-2, p. 5. Additionally, *each one* of these written warnings provided to the Plaintiff specifically advised Plaintiff of her rights under the FMLA as well as of her right to seek "[l]eave as reasonable job accommodation", and that she should contact the leave administrator if she wanted to seek or assert a claim for covered leave with respect to any of these absences. Further, during this same period of time, on October 17, 2011, employees in sales positions (such as the Plaintiff's) became subject to new sales attendance guidelines, part of which also advised that any employees "who believe they need an accommodation

---

[7]Plaintiff was placed on "Counseling Discipline" on July 23, 2011 for being late to work four (4) times in the month of July. <u>See</u> <u>Plaintiff's Deposition, Exhibit Fourteen</u> (Court Docket No. 39-20, p. 1). Plaintiff was given a "written warning" on August 12, 2011 for being late to work twice more in July, and then five (5) more times in August. <u>See</u> <u>Plaintiff's Deposition, Exhibit Fifteen</u> (Court Docket No. 39-21, p. 1). Plaintiff thereafter received a "Final Written Warning" on October 24, 2011 for being late on October 17, 2011 and for being absent from work on October 29, 2011. <u>See</u> <u>Plaintiff's Deposition, Exhibit Seventeen</u> (Court Docket No. 39-22, p. 1).



should contact the Integrated Disability Service Center at 886-276-2278 to request a job accommodation". Brechbill Declaration, Exhibit Two, pp. 8-11 (Court Docket No. 39-2, pp. 8-11). However, Plaintiff testified that she only requested an "accommodation" under the ADA for the one day she was absent on October 19, 2011, while she did not attempt to file for FMLA leave for any of this time. Plaintiff's Deposition, pp. 63-65.

After being issued the final written warning of October 24, 2011, Plaintiff incurred some additional attendance points for unexcused tardies[8] such that by December 6, 2011, she had accumulated a total of 10.75 points (as previously noted, the termination threshold under the Regional Labor Agreement was only 7 points). See Plaintiff's Deposition, Exhibit 18 (Court Docket No. 39-23). The evidence provided to the Court reflects that of all the dates on which Plaintiff accumulated points that resulted in her termination notice, Plaintiff had only sought protection under the FMLA (for which she was denied) on one occasion, her full day absence of October 19, 2011. Hallmon Declaration, ¶ 8.[9] However, that request was denied because Plaintiff failed to submit the required medical documentation to show that her absence was due to a serious medical condition (notwithstanding Plaintiff having been provided an extension of time to do so). Id; Exhibit, Court Docket No. 39-11, pp. 51-54 (Copies of Plaintiff's FMLA Records pertaining to denial of FMLA

---

[8]Plaintiff was late to work on October 29, 2011, October 31, 2011, November 26, 2011, November 28, 2011, and December 6, 2011. See Plaintiff's Deposition, Exhibit 18 (Court Docket No. 39-23).

[9]Although, as previously noted, Plaintiff initially testified that she had requested an accommodation under the ADA for this absence, and did not request FMLA leave, she subsequently testified that her one day absence in October 2011 should have been approved as FMLA leave, although she then later again testified that it was "a part of my disability". See Plaintiff's Deposition, pp. 63-65, 82. In any event, it is clear in the evidence that Plaintiff did in fact request FMLA leave for that absence. See Hallmon Declaration, Exhibit A (Court Docket No. 39-12, pp. 9-12).



leave on October 19, 2011).[10]  While Plaintiff appears to have claimed during her deposition that, on at least five (5) other times when she was tardy, she could or should have been entitled to FMLA leave (Plaintiff was asked at her deposition about "five different tardies"), and for which she apparently accumulated attendance points, Plaintiff testified that she did not file for FMLA leave for any of those "tardies" because she "wasn't aware I needed to".  Plaintiff's Deposition, pp. 58-59.

As for her rights under the ADA, when asked if she had ever filed for a job accommodation under the ADA because of her disability, Plaintiff responded: "I cannot answer that because there was so many different things.  I mean, I don't know exactly what I was filing".  Plaintiff's Deposition, pp. 58-59.  However, the Defendant has provided evidence from the manager of AT&T Job Accommodations, who attests that there is no record of Plaintiff ever requesting a job accommodation for any disability through the Defendant's ADA accommodation request process.  See Korzekwa Declaration.

Beginning in late December 2011 Plaintiff was out of work on short term disability leave, and did not return until almost the end of February 2012.  That leave period was considered approved FMLA leave time; additionally, as Plaintiff was also approved for short term disability benefits, she was paid for that period of time.  Plaintiff's Deposition, pp. 128-129; Hallmon Declaration, ¶ 7.  However, about a week after Plaintiff returned to work, she was terminated on February 28, 2012.  The termination notice states that she was terminated due to her having accumulated 10.75 attendance points through December 6, 2011.  Plaintiff's Deposition, pp. 129-130, and Plaintiff's Deposition, Exhibit 18 (Court Docket No. 39-23).

---

[10]The evidence reflects that on all other occasions on which Plaintiff sought approval for FMLA leave in 2010, 2011, and 2012, her requests were granted.  Hallmon Declaration, ¶ 7.



Ten months later, on December 17, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the South Carolina Human Affairs Commission (SCHAC). <u>Plaintiff's Deposition</u>, pp. 89-90, <u>Plaintiff's Deposition, Exhibit Eight</u> (Court Docket No. 39-18). After receiving a right to sue letter, Plaintiff filed this federal lawsuit.

## Discussion

Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).

Here, after careful review and consideration of the evidence and arguments presented, the undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

## I.

## (ADA Claim)

In her First Cause of Action, Plaintiff alleges that she had a qualifying condition under the ADA, that she "requested numerous reasonable accommodations" for her condition, but that the



Defendant AT&T "failed to provide [her] a reasonable accommodation", which could have included either approval of Plaintiff's days off under the relevant leave or amnesty policy, the granting to her of FMLA leave, or both. Plaintiff alleges that the Defendants' failure to accommodate her disability resulted in her incurring disciplinary actions due to attendance issues, which ultimately led to her termination. <u>Amended Complaint</u>, ¶¶ 61-68.

Plaintiff's failure to accommodate claim under the ADA is evaluated under the same standards as a disparate treatment discrimination claim asserted under Title VII of the Civil Rights Act of 1964. <u>Cunningham v. Enterprise Rent-A-Car Co.</u>, No. 07-1615, 2010 WL 724507 at * 4 (W.D.Pa. Mar. 1, 2010)[The same standards govern disparate treatment claims arising under either Title VII or the ADA.]; <u>Carr v. Mike Reichenback Ford Lincoln, Inc.</u>, No. 11-2240, 2013 WL 1282105 at * 3 (D.S.C. Mar. 26, 2013) [same]. Such claims require proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Here, both parties have addressed Plaintiff's ADA claim under the <u>McDonnell Douglas</u> analysis, which provides for a three-part formula for analyzing discrimination cases.

<u>First</u>, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her. <u>Second</u>, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. <u>Third</u>, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really

9



based on Plaintiff's disability. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-256 (1981); <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see also</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).

**Prima facie case**. In order to establish a prima facie case for failure to accommodate, Plaintiff must show: (1) she had a "disability"; (2) the Defendant had notice of her disability; (3) that with a reasonable accommodation, she could perform the essential functions of her position; and (4) the Defendant refused to make such accommodations. <u>Reyazuddin v. Montgomery County, Maryland</u>, 789 F.3d 407, 414-416 (4th Cir. 2015); <u>Haneke v. Mid-Atlantic Capital Management</u>, 131 Fed.Appx. 399, 400 (4th Cir. May 10, 2005).

Defendant argues that Plaintiff has not established her prima facie case because she has failed to present evidence to show that she even has a "disability" within the meaning of the ADA, thereby entitling the Defendant AT&T to dismissal of this claim.[11] The term "disability" is

---

[11]In addressing Defendant's "disability" argument, it must be noted that Congress made substantial changes to the ADA through the ADA Amendments Act of 2008 ("ADAAA"), which had an effective date of January 1, 2009. "The ADAAA was intended to clarify congressional intent with respect to the original ADA, as well as to overturn certain United States Supreme Court cases that had narrowed the ADA's scope". <u>Ryan v. Columbus Regional Healthcare System, Inc.</u>, No. 10-234, 2012 WL 1230234 at * 3 (E.D.N.C. Apr. 12, 2012). Under the ADAAA, "[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals . . . , to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A); <u>Jacobs v. N. C. Administrative Office of the Courts</u>, 780 F.3d 562, 572 (4th Cir. Mar. 12, 2015). Further, "[t]he primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1 (2011). Since Plaintiff's allegations post-date January 1, 2009, the undersigned (continued...)



defined as a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual, b) a record of such impairment, or c) being regarded as having such an impairment. 42 U.S.C. § 12102(1); Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467 (4th Cir. 2002), cert. denied, 123 S.Ct. 122 (2002). A "major life activity" is defined as a basic activity that an average person can perform with little or no difficulty, such as walking, hearing, speaking, learning, breathing, standing, lifting, seeing and working. Appendix to 29 C.F.R. § 1630.2(I); see Bruncko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723-727, n. 7 (5th Cir. 1995); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 1994), cert. denied, 513 U.S. 810 (1994) ( Rehabilitation Act).[12] Major life activities also include caring for oneself, eating, concentrating, thinking, and sleeping. See 42 U.S.C. § 12102(2)(A); Jacobs, 780 F.3d at 572 ["The ADA provides a nonexhaustive list of major life activities, including 'speaking', 'concentrating', 'thinking', 'communicating', and 'working'"].

Defendant does not contest that Multiple Sclerosis qualifies as a "disability" under the ADA, but argues that during her period of employment Plaintiff had only verbally advised her supervisors that she had MS, while during the discovery phase of this lawsuit Plaintiff produced medical records from her physicians which fail to confirm a specific diagnosis of MS. See Defendants' Exhibit 1 (Medical Records of Dr. Walker), Exhibit 2 (Medical Records of Dr.

---

[11](...continued)
has considered Plaintiff's claim, including whether she has shown that she has a "disability", pursuant to this broadened standard.

[12]See Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) [same standards apply to ADA and Rehabilitation Act]; Smaw v. Commonwealth of Virginia Department of State Police, 862 F.Supp. 1469, 1474 (E.D.Va. 1994) [same].

11



Downing). However, Dr. Downey does list MS as a diagnosis current and contributing in his report. See Court Docket No. 39-11, p. 41. Furthermore, even assuming for purposes of summary judgment that Plaintiff has failed to establish that she actually has MS, she can still be deemed to have a "disability" for purposes of a claim under the ADA if the evidence shows that the Defendant "regarded" her as having a disabling impairment. See 42 U.S.C. § 12102(3); Young v. United Parcel Service, Inc., 784 F.3d 192, 199 (4th Cir. 2015); Wilson v. Phoenix Specialty Mfg. Co., Inc., 513 F.3d 378, 384-385 (4th Cir. 2008); MacDonald v. Delta Airlines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996).

> Prior to Congress' passage of the ADA Amendment Act of 2008, Pub. L. No. 110–325, § 2(b)(1)-(6), 122 Stat. 3553 (2008) ("ADAAA"), there were two ways in which a person could be regarded as being disabled: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). However, with the passage of the ADAAA, which became effective January 1, 2009 and overruled Sutton, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived . . . impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §12102(3)(A).

Mohney v. Pennsylvania, 809 F.Supp.2d 384, 400 n. 14 (W.D.Pa. 2011).

Here, the evidence shows that Plaintiff had specifically sought FMLA leave on the grounds that she had MS. See Hallmon Declaration, Exhibit A (Court Docket No. 39-12, pp. 9-12). Both Edens and Brechbill also testified that they had been advised that Plaintiff was suffering from MS, with Brechbill even testifying that it was "common knowledge" that Plaintiff had MS. Edens Deposition, pp. 17-19, Brechbill Deposition, pp. 14-15. Further, as a result of this information, both of these managers advised Plaintiff about the process for seeking FMLA leave and/or

12



accommodations for her condition. Considered in the light most favorable to the Plaintiff, this evidence is sufficient to create a genuine issue of fact with respect to whether the Defendant at least believed or perceived that Plaintiff had MS (which Defendant concedes qualifies as a "disability" under the ADA) to satisfy the "regarded as" prong for establishing disability, even if this Court were to otherwise find Plaintiff has not established she has a disability under the other two prongs of the "disability" definition. 42 U.S.C. § 12102(3). Therefore, the undersigned finds that Plaintiff has established that she had a "disability" for purposes of her prima facie case.

However, it is at this point that Plaintiff's ADA claim fails, as Plaintiff has failed to present any evidence to show that she asked for an accommodation to address any difficulty she was having working due to her condition which was improperly denied by the Defendant. Plaintiff's contention is that she should have been provided more flexible scheduling because sometimes her MS would make it harder for her to "get up" or required her to sleep late. Plaintiff's Deposition, pp. 58-59. However, Edens and Brechbill both testified that Plaintiff never asked for a work place accommodation due to her purportedly having MS. Edens Deposition, 38-40; Brechbill Deposition, pp. 63-65.[13] The Defendant's job accommodations manager also attests that there is no record of Plaintiff ever having initiated the formal process for making a job accommodations request due to her condition. Korzekwa Declaration, ¶¶ 13, 15.

For her part, when asked at her deposition what accommodations she had requested, Plaintiff testified "I mean, I guess, you - - they failed to accommodate me out while I was sick in October [2011, when she was out one day] . . . . There was [also] a day I was sick [date not specified]

_____

[13]As noted, Plaintiff even testified that her condition was essentially "in remission" during most of the time Edens was her supervisor. Plaintiff's Deposition, p. 61.



. . . I asked to leave early and I was told I would get points taken, so . . . I had to work sick".

Plaintiff's Deposition, pp. 63-64.  Those are the only two (2) dates (events) identified by Plaintiff

with respect to this claim.  Korzekwa has attached as an exhibit to her declaration a copy of an

FMLA Leave Request Plaintiff submitted for the day she missed on October 19, 2011, showing that

Plaintiff did request FMLA leave approval for the day she missed due to "Multiple Sclerosis".

Defendants Exhibit (Court Docket No. 39-12, pp. 9-12).[14]  However, even if this FMLA leave

request could be considered as an accommodation request based on a disability for purposes of

Plaintiff's ADA claim; cf. McCall v. City of Philadelphia, No. 14-4374, 2015 WL 7274068 at * 2

(3rd Cir. Nov. 18, 2015) ["We recognize that a request for FMLA leave may qualify in certain

circumstances as a request for an accommodation under the ADA."] (citing 29 C.F.R.

825.702(c)(2)); the evidence shows that Plaintiff's request to have this absence excused because she

had MS was denied because she failed to provide the required medical certification forms showing

that her absence from work on October 19, 2011 was actually due to a serious health condition.

Hallmon Declaration, ¶ 8; see also Exhibits [Medical Certifications] (Court Docket No. 39-12, pp.

6-8, 10-13); Therefore, Plaintiff has presented no evidence to show that the Defendant failed to

honor a proper request for a necessary accommodation due to Plaintiff's disability on that date.

       As for the other time mentioned by the Plaintiff, Plaintiff testified that one day she

was sick and throwing up and asked to leave early, but that when she was told she would "get points

taken", she stayed at work.  Plaintiff's Deposition, p. 64.  However, Plaintiff does she indicate

---

    [14]As previously noted, Plaintiff presented conflicting testimony as to whether she had asked for an accommodation under the ADA for her absence in October 2011, or whether she had sought approval of FMLA leave for this absence. Plaintiff's Deposition, pp. 63-65, 82. However, this leave request (signed by the Plaintiff) is clearly one for FMLA leave.



anywhere in her testimony that she ever requested an accommodation for a "disability" due to her being sick that day, or indeed that her purported MS even had anything to do with her being sick that day. Gwendolyn Jarrett v. Retzer Group, Inc., No. 14-744, 2015 WL 9581875 at * 3 (E.D.Ark. Dec. 30, 2015) ["If an employee does not make a request for accommodation, then the employer has no duty to accommodate."] (citing Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002)); see also Godlove v. Martinsburg Senior Towers, LP, No. 14-132, 2015 WL 1809325 at * 4 (4th Cir. Apr. 21, 2015) ["A reasonable accommodation claim requires proof of such a specific request."]. Plaintiff further testified that she also did not try to request FMLA leave on that occasion, saying she "wasn't really sure at that point what I could do". Id.; see also pp. 59-60. However, the evidence before this Court is replete with notices and instructions Plaintiff had received about her rights both under the FMLA and to seek accommodation for medical problems. Edens Deposition, pp. 20-22, 38-40; Plaintiff's Deposition, pp. 37, 60-61, 63-65; Brechbill Deposition, Exhibit Two, pp. 8-11 (Court Docket No. 39-2, pp. 8-11).

Therefore, Plaintiff has failed to establish her prima facie case of failure to accommodate under the ADA, because she has failed to present any evidence to show that she requested an accommodation under the ADA for a disability related work requirement, or that even when she did, the Defendant failed to accommodate a medically documented need that she had.[15]

---

[15]Although the undersigned has addressed the two (2) claims referenced hereinabove on the merits, the Defendant also contends that Plaintiff's ADA Cause of Action with respect to these two incidents is barred because they both occurred well outside of the three hundred (300) day limitations period applicable to these claims. Before filing suit under the ADA, a Plaintiff must first exhaust their administrative remedies by bringing a charge with the EEOC, and if the alleged discrimination occurred in a "deferral state", such as South Carolina, the charge must have been filed within three hundred (300) days after the allege unlawful employment practice occurred. See 42 U.S.C. §
(continued...)



Cf. Jarrett, 2015 WL 9581875 at * 3; Godlove, 2015 WL 1809325 at * 4; Sanders v. Benjamin

Moore & Co., No. 11-397, 2015 WL 1489855 at 45 (N.D.Ala. Mar. 31, 2015).

        Even with respect to Plaintiff's termination (which would fall within the three

hundred (300) day limitations period for bringing an ADA claim; see n. 14, supra); Plaintiff has

provided no evidence to show that any of the attendance points she accumulated which resulted in

her termination (other than with respect to her absence of October 19, 2011) were due to the

Defendant's failure or refusal to grant her a requested accommodation for a disability, and with

respect to October 19, 2011, Plaintiff has provided no evidence to show she provided the required

documentation to have had this request approved, while the Defendant has provided evidence to

show affirmatively that she did not. See Hallmon Declaration, Exhibit A [Medical Certifications]

(Court Docket No. 39-12, pp. 6-8, 10-13). Further, even subtracting that one day, Plaintiff still had

accrued well in excess of the number of attendance points required for termination under the terms

of the Regional Labor Agreement.

        Therefore, Plaintiff's ADA claim is without merit, and the Defendant is entitled to

---

[15](...continued)
12117(a). Therefore, since Plaintiff did not file her administrative charge of discrimination until December 17, 2012, she may ordinarily only pursue any discrimination claims that occurred on or after February 21, 2012. While a claimant may in some circumstances include claims beyond the required three hundred day period where the Defendant's conduct is deemed to be a "continuing violation", since the undersigned has concluded these two claims fail on the merits, it is not necessary to reach this issue. Even so, under the applicable caselaw, separate and distinct acts of discrimination, as are alleged by the Plaintiff here, are not usually considered as part of a "continuing violation" absent some exceptional circumstance. See National RR Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) [Finding that discrete acts of discrimination and each adverse employment action constitutes a separate actionable "unlawful employment practice", and prior discreet discriminatory acts which are not filed withing the 300 day time limit "are untimely filed and no longer actionable"].



summary judgment on this claim.

## II.

### (Breach of Contract)

In her Second Cause of Action, Plaintiff alleges that the Defendant AT&T issued, or had enforced, employee handbooks and manuals which were available to all employees, that she was subject to the terms and conditions of the Regional Labor Agreement, and that the Defendant's mandatory policies with regard to attendance and the Regional Labor Agreement created a contract of employment between her and the Defendant AT&T.  Plaintiff further alleges that, among other things, the Regional Labor Agreement promised that the Defendant would provide equal employment opportunities without regard to disability and that the Defendant would follow specific rules and regulations with regard to attendance policies and discipline, and that as a result of the Defendant's breach of these rules and regulations, she suffered damages.  See Amended Complaint, ¶ 71-80.

However, Plaintiff acknowledged in both her Amended Complaint and during her deposition that she was subject to the terms and conditions of the Regional Labor Agreement between the Defendant AT&T and the Communications Workers of America; see Amended Complaint, ¶ 72; Plaintiff's Deposition, pp. 38, 62; that she was expressly bringing her breach of contract claim based on the Regional Labor Agreement combined with the Defendant's handbook; see Amended Complaint, ¶¶ 71-79; and further specifically acknowledged in her deposition that this Labor Agreement was the only "contract" she had with AT&T.  Plaintiff's Deposition, p. 62.  Since Plaintiff's claim expressly requires inquiry into the Regional Labor Agreement, this results in preemption.  Manos v. United Food and Commercial Workers Intern. Union, 9 F.Supp.3d 473, 479-



480 (D.N.J. Mar. 28, 2014) [Noting that since Plaintiff expressly brought claim based upon Union Contract, defendant's handbook, and other employment agreements, the analysis required inquiry into Plaintiff's CBA and demands preemption].  As such, even if Plaintiff had intended to also assert a separate state law breach of contract claim in this lawsuit, it would be preempted by the Regional Labor Agreement and subject to dismissal.  Foy v. Giant Food, Inc., 298 F.3d 284, 287 (4th Cir. 2002) [State law claim is preempted when the nature and scope of the duty owed a Plaintiff is determined by reference to a collective bargaining agreement]; Smith v. Giant Food, LLC, 931 F.Supp.2d 717 (D.Md. 2013) [The "preemptive effect also extends beyond suits alleging violation of CBAs to suits relating to what parties of a labor agreement agreed and what legal consequences were intended to flow from breaches of that agreement . . . ."] (citing Allis-Chalmers v. Lueck, 471 U.S. 202, 210-211 (1985)).

With respect to the terms of the Labor Agreement itself, "Section 301 of the Labor Management Relations Act establishes federal subject matter jurisdiction over employment disputes covered by a collective bargaining agreement and directs federal courts to fashion a uniform body of federal common law applicable to such disputes".  Foy, 298 F.3d at 287.  Under the federal common law, as interpreted by the United States Supreme Court, a six month statute of limitations applies to a claim for breach of a collective bargaining agreement.  Foy, 298 F.3d at 291; see Del Costello v. Int'l. Board of Teamsters, 462 U.S. 151, 171-172 (1983).  As Plaintiff was terminated on February 28, 2012, and she did not file her Complaint in this matter until May 20, 2014, it is self evident that Plaintiff failed to timely file her contract claim, subjecting it to dismissal.

Further, the Defendant correctly also notes that the Regional Labor Agreement provides that an employee has forty-five (45) days after their termination in which to file a grievance;



18

<u>see</u> <u>Plaintiff's Deposition Exhibit One</u>, <u>Exhibit</u>, [Regional Labor Agreement, pp. 8-9] (Court Docket No. 39-17, pp. 10-11); and as a general rule, when a collective bargaining agreement includes a grievance procedure, that procedure is the employee's exclusive remedy and they must attempt to use it. <u>Republic Steel Corp. v. Maddox</u>, 379 U.S. 650, 653-654 (1965). However, Plaintiff confirmed in her deposition that she never filed a grievance with respect to any of the disciplinary actions taken against her by Brechbill, nor did she ever file a grievance with respect to her termination. <u>Plaintiff's Deposition</u>, pp. 62, 84.

In her brief opposing summary judgment, Plaintiff does not contest any of this evidence; rather, she simply argues that she did not contest her termination under the union contract because to have done so would have been "futil[e]". <u>Plaintiff's Brief</u>, p. 25. This conclusory statement, without more, is not sufficient to survive summary judgment on this claim. <u>Cf</u>. <u>Rucker v. Greenville Co. Sheriff Dep't.</u>, No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012)[Conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion]. Therefore, the Defendant is entitled to summary judgment on this claim.

### III.

### (FMLA Claim)

In her Third Cause of Action under the FMLA (asserted against both AT&T and Brechbill), Plaintiff alleges that she is a qualified employee under the FMLA, that she requested FMLA leave for qualifying personal conditions, that she submitted medical information to her employer supporting her need for FMLA leave, but that the Defendants "did intentionally, recklessly and negligently interfere with and/or deny Plaintiff's FMLA leave" requests, resulting in her being

19



subject to disciplinary action and ultimately termination due to attendance issues that should have been covered under the FMLA.  In addition to her employer AT&T being liable, Plaintiff also alleges that her supervisor Daniel Brechbill is liable individually "as he exercised some control over Plaintiff's employment and the decisions to discipline and to terminate Plaintiff in violation the Act".  See generally, Amended Complaint, ¶ ¶ 83-89.[16]

The FMLA provides twelve (12) weeks of unpaid leave per year for eligible employees.  An "eligible employee" under the Act is an employee who has been employed for at least twelve (12) months by the employer with respect to whom leave is requested, and for at least one thousand two hundred and fifty (1,250) hours of service with such employer during the previous twelve (12) month period.  29 U.S.C. § 2611(2)(A).  The Defendants do not dispute that Plaintiff qualifies as an "eligible employee" under this standard.  As such, Plaintiff was entitled to take reasonable leave for medical and other reasons in a manner that accommodated the legitimate interests of her employer. 29 U.S.C. § 2612.  See Taylor v. Progress Energy, Inc., 493 F.3d 454, 457 (4th Cir. 2007)[Under the FMLA, an employee has a "right to take a certain amount of unpaid medical leave each year and the right to reinstatement following such leave."].

The FMLA creates two types of claims: "(1) interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantiative rights under the Act; and (2) retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because [she] engaged in activity protected by the Act".  Carr v. Mike

---

[16]Unlike her ADA claim, Plaintiff did not need to exhaust administrative remedies through the EEOC or SCHAC to proceed with this claim.  Breedlove v. Cabou, 296, 296 F.Supp.2d 253, 276 (N.D.N.Y. 2003); see also Southard v. Wicomico County Bd. of Educ., No. 15-61, 2015 WL 4993721 at * * 10-11 (D.Md. Aug. 20, 2015).  Cf., n. 15, supra.



Reichenbach Ford Lincoln, Inc., No. 11-2240, 2013 WL 1282105 at *6 (D.S.C. Mar. 26, 2013)(quoting Gleaton v. Monumental Life Ins. Co., 719 F.Supp.2d 623, 633, n. 3 (D.S.C. 2010)); Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3rd Cir. 2006). As set forth in her Amended Complaint, Plaintiff asserts an FMLA interference claim in this lawsuit. Specifically, Plaintiff alleges that the Defendants interfered with her rights under the FMLA by failing to grant her FMLA leave requests, thereby resulting in her receiving excessive attendance "points", resulting in her termination. Amended Complaint, ¶ ¶ 85-87; see Reid v. Smithkline Beecham Corporation, 366 F.Supp.2d 989, 998 (S.D.Cal. 2005) [holding that claim that employee was terminated as a result of requesting and taking FMLA protected leave was properly analyzed as an interference cause of action].

"To establish unlawful interference with an entitlement to FMLA benefits, an employee must show that: (1) [s]he was an eligible employee, (2) [her] employer was covered by the Act, (3) [s]he was entitled to leave under the FMLA, (4) [s]he gave [her] employer adequate notice of [her] intention to take leave, and (5) the employer denied [her] FMLA benefits to which [s]he was entitled." Carr, 2013 WL 1282105 at * 7 (quoting King v. Blanchard Mach. Co., No. 10-3219, 2012 WL 4586177 at * 5 (D.S.C. Sept. 28, 2012)); Makowski v. Smithamundsen LLC, 662 F.3d 818, 825 (7th Cir. 2011. Furthermore, to succeed on this claim, Plaintiff must show that the interference she alleges caused her prejudice. Downey v. Strain, 510 F.3d 534, 540 (5th Cir. 2007)["[T]he FMLA's remedial scheme . . . requires an employee to prove prejudice as a result of an employer's noncompliance."], (citing Ragsdale v. Wolverwine World Wide, Inc., 535 U.S. 81, 90 (2002)); Anderson v. Discovery Communications, LLC, No. 11-2195, 2013 WL 1364345, at * 6 (4th Cir. Apr. 5, 2013)[In order to establish a FMLA interference claim, Plaintiff has to prove not



only interference, but that the violation prejudiced her]; Croy v. Blue Ridge Bread, Inc., No. 12-00034, 2013 WL 3776802, at * 8 (W.D.Va. July 15, 2013)[Plaintiff must demonstrate that he was prejudiced in some way].

The Defendants do not dispute the first three elements of Plaintiff's FMLA interference claim. Rather, Defendants argue that Plaintiff has failed to present any evidence to show that (other than on one date, October 19, 2011) Plaintiff provided notice of intention to take FMLA leave that she was denied, or that the Defendants denied Plaintiff FMLA benefits to which she was entitled. Defendants further argue that Plaintiff has failed to show any prejudice due to the denial of her FMLA leave request for October 19, 2011 (the only time Defendants contend she was denied requested FMLA leave), since none of the other tardies or absences relied on by the Defendants when issuing Plaintiff her counseling discipline, written warning, final written warning, or termination notice were the subject of an application for FMLA leave by the Plaintiff, or that her termination was a result of any improper denial of leave. Anderson, 2013 WL 1364345, at * 6 [In order to establish a FMLA interference claim, Plaintiff has to prove not only interference, but that the violation prejudiced her]. The undersigned is constrained to agree.

The only evidence provided to this Court wherein Plaintiff requested FMLA leave relating to any attendance issue which led to her termination is Plaintiff's request for FMLA leave for the day she was out of work October 19, 2011. See Exhibit, Court Docket No. 39-12, pp. 9-12. However, Defendants have submitted evidence to show that Plaintiff's request for this absence to be credited as FMLA leave was denied because Plaintiff failed to submit medical documentation to support this request. Hallmon Declaration, ¶ 8, and Hallmon Declaration, Exhibit A (Court Docket No. 39-12, pp. 6-8, 10-13). It is also noted that Plaintiff requested, and was approved for, FMLA

22



leave on other occasions (and on other grounds, not based on Plaintiff having MS) in 2010, 2011 and

2012. <u>Hallmon Declaration</u>, ¶ 7 and attached Exhibit A. Plaintiff has presented no evidence to show

that she requested FMLA leave at any other time, or that she was denied FMLA leave at any other

time, notwithstanding having been *repeatedly* told by both of her managers (Edens and Brechbill)

that all she had to do was put in an FMLA leave request when she wished to have any absences

covered under the FMLA.[17] <u>See generally</u>, <u>Plaintiff's Deposition</u>, pp. 37, 59-61, 64, 74-75, 78-80,

82, 136-137; <u>Brechbill Deposition</u>, pp. 28-29, 35-36, 39-42, 44-46, 49-50, 61-66, 75, 77, 115, 123-

125, 150-152; <u>Edens Deposition</u>, pp. 20-22, 39-40, 45-46, 53-54, 70-71, 79-81, 83-85. Plaintiff was

also provided numerous written notices about how to apply for FMLA leave, and was further advised

on *each occasion* when she received written warnings that if she believed any of the absences for

which she was being cited qualified for FMLA leave, she should notify the Defendant.

       This evidence shows that the Defendant satisfied its obligation to provide notice of,

and seek information relating to, employee FMLA rights under the statute. <u>Cf</u>. <u>Krenzke v.</u>

<u>Alexandria Motor Cars, Inc.</u>, 289 Fed. Appx. 629, 632 (4th Cir. 2008); <u>Dotson v. Pfizer, Inc.</u>, 558

F.3d 284, 293 (4th Cir. 2009), citing <u>Price v. City of Fort Wayne</u>, 117 F.3d 1022, 1026 (7th Cir. 1997).

However, other than for October 19, 2011, Plaintiff failed to seek FMLA leave for any of the

absences resulting in her termination. In sum, this evidence does not create a genuine issue of fact

as to whether Plaintiff either gave AT&T adequate notice of her intention to take FMLA leave (other

than on October 19, 2011) or that AT&T (or Brechbill) denied her any FMLA benefits to which she

---

[17]That Plaintiff knew the process for applying for FMLA is self evident, given that the evidence before the Court shows that she in fact applied for FMLA leave on several occasions during the time she was employed at AT&T.



was entitled. <u>Cf</u>. <u>Sommer</u>, 461 F.3d at 399 [interference claim is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA]; <u>Anderson</u>, 2013 WL 1364345, at * 6 [In order to establish a FMLA interference claim, Plaintiff has to prove not only interference, but that the violation prejudiced her].

Finally, the evidence further reflects that Plaintiff had accumulated well over the required number of attendance points to cause her to be terminated, and she is not insulated from discipline merely because she had indicated she had MS or had, or was going to be, seeking FMLA leave. <u>Bone v. G4S Youth Servs., LLC</u>, 686 F.3d 948, 959 (8th Cir. 2012)[Fact that Plaintiff took FMLA leave does not insulate an employee from termination for reasons unrelated to the taking of her FMLA leave]; <u>Nichols v. Caroline County Bd. of Educ.</u>, 123 F.Supp.2d 320, 327 (D.Md. 2000) [Plaintiff's contention that supervisors subjected her to adverse employment actions "because I am who I am" insufficient to establish discriminatory character to their disagreements and misunderstandings]; <u>cf</u>. <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir. 1985) <u>overruled on other grounds</u>, <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989) ["Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct."].

> [T]he FMLA is not a strict-liability statute. <u>Throneberry v. McGehee Desha County Hosp.</u>, 403 F.3d 972, 977 (8th Cir. 2005). An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave. <u>See id</u>. . . . Therefore, an employer who "interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." <u>Throneberry</u>, 403 F.3d at 977; <u>see also</u> <u>Bacon [v. Hennepin Cuonty Med. Ctr.]</u>, 550 F.3d [711,] 715 [(8th Cir. 2008)]; <u>Phillips [v. Mathews]</u>, 547 F.3d [905,] 911-912 [(8th Cir. 2008)].

<u>Estrada v. Cypress Semiconductor, Inc.</u>, 616 F.3d, 866, 871 (8th Cir. 2010).

24



Therefore, this claim is without merit.

### **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____

Bristow Marchant
United States Magistrate Judge

January 7, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

